# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERTO MANUEL VEGA,<br><br>　　　　Defendant. | Case No. CR 21-0537 FMO<br><br>**ORDER RE: MOTION TO QUASH SUBPOENA** |

Having reviewed and considered all the briefing filed with respect to the Los Angeles Police Department's ("LAPD") Motion to Quash Defendant's Subpoena (Dkt. 45, "Motion"),[1] the court concludes as follows.

## BACKGROUND

Roberto Manuel Vega ("Vega" or "defendant") is charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  (See Dkt. 14, Indictment at 1-

---

[1] The government filed a Joinder in [the LAPD]'s Motion to Quash Defendant's Subpoena (Dkt. 53, "Joinder").  However, it did not address the issue of standing.  (See, generally, Dkt. 53, Joinder).  To have standing to move to quash a subpoena, the government must show that it has suffered an injury in fact.  See, e.g., United States v. Chan, 2020 WL 2425798, *2 (N.D. Cal. 2020) (noting that legitimate interests "may confer upon a party standing to move to quash a third party subpoena" and that the court was "not aware of any basis on which the United States has standing to oppose issuance of subpoenas to nonparty Palo Alto Police Department or its officers") (internal quotation marks omitted); United States v. Chea, 2019 WL 2465492, *3 (E.D. Cal. 2019) (denying government's motion to quash and noting that "[t]he government bears the burden of establishing its standing to move to quash the subpoena issued to the Stockton Police Department and it has not met its burden.").  Accordingly, the court will not consider the government's Joinder, except to the extent it is necessary to address any argument raised by the LAPD in its Motion.

2).  LAPD Officers Julio Guzman ("Guzman"), Jasmine Jianu ("Jianu"), and Andrew Jones ("Jones") (collectively, the "officers"), among others, stopped, searched, and arrested Vega.  (See Dkt. 50, Opposition to Non-Party Los Angeles Police Department's Motion to Quash Subpoena Duces Tecum ("Opposition") at 1, 4).  The officers' conduct is the subject of a motion to suppress in which defendant argues, among other things, that the evidence seized by the LAPD, including any post-arrest statements, must be suppressed as the fruits of an unlawful arrest.  (See Dkt. 30, Motion to Suppress at 1, 7-23).  The government submitted a declaration from Jones and Guzman in support of its opposition to the pending motion to suppress.  (See Dkt. 33-1, Declaration of Andrew Jones ("Jones Decl.")); (Dkt. 33-2, Declaration of Julio Guzman Jr. ("Guzman Decl.")).

On September 27, 2022, defendant issued a subpoena to the LAPD seeking the production of:

> All documents and materials related to: LAPD Officer Julio Guzman, Jr., #43214; LAPD Officer Andrew Jones, #41719; LAPD Officer Jasmine Jianu, #42334, for the following information: (1) criminal arrests, prosecutions, convictions, or, (2) civil or administrative matters such as personnel actions, disciplinary complaints, citizen complaints, Board of Rights hearing transcripts, investigative notes or documents that relate to credibility and/or honesty, including any allegations of planting or falsifying evidence, preparation or approval of false reports, and the giving of false statements or testimony.

(Dkt. 45, Motion, Exhibit ("Exh.") 1, Subpoena at ECF 283).

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c)[2] provides, in relevant part, that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are offered in evidence." Fed. R. Crim. P. 17(c).  "On motion made promptly," the

---

[2] Unless otherwise indicated, all "Rule" references are to the Federal Rules of Criminal Procedure.

court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17(c)(2).

To justify a Rule 17 subpoena for production before trial, the proponent of the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103 (1974); United States v. Sleugh, 896 F.3d 1007, 1012 (9th Cir. 2018) (same). In particular, the proponent must show

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

Nixon, 418 U.S. at 699-700, 94 S.Ct. at 3103 (footnote omitted). "These determinations are of course committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." United States v. Eden, 659 F.2d 1376, 1381 (9th Cir. 1981); Nixon, 418 U.S. at 702, 94 S.Ct. at 3104.

## DISCUSSION

A. Evidentiary and Relevant.

The LAPD asserts that "[t]he subpoena is overbroad because it seeks discovery of all records for any and all complaints regardless of their status and resolution" and that defendant "will not be able to satisfy his burden to demonstrate both the relevance and admissibility of all the records sought[.]" (Dkt. 45, Motion at 3-4). The LAPD also asserts that "the records sought appear to be for impeachment use only" and that, "unless the defendant can explain how the records are admissible for purposes other than impeachment, the subpoena is premature and should be quashed at this time." (Id. at 4). The LAPD's assertions are unpersuasive.

As an initial matter, complaints regarding law enforcement conduct are discoverable, regardless of the disposition of the complaints. See, e.g., United States v. Kiszewski, 877 F.2d

210, 215-16 (2nd Cir. 1989) (finding error where district court refused to compel disclosure of personnel files even where "the FBI exonerated [the agent] on the first complaint, issued a letter of reprimand on the second and deemed the other allegations unfounded"); United States v. Jack, 2009 WL 425982, *2 (E.D. Cal. 2009) (noting, in context of defendant's request for potential impeachment evidence, that "[t]he scope of information disclosed shall include all information favorable to the defense in attempting to impeach the witness, including either disclosure or in camera submission of documents reflecting any complaint, investigation or internal administrative or disciplinary proceeding regardless of whether the complaint or allegation was found to be credible by the agency"). Further, as to the LAPD's claim that the subject evidence is for impeachment purposes only, (see Dkt. 45, Motion at 4), it is clear, as noted below, that the information sought by the subpoena will not be used solely for impeachment. However, even if it were, such evidence may still be ordered produced for an in camera inspection so that the information can be disclosed in a timely manner, thereby avoiding any delay in the court's proceedings. See, e.g., United States v. Cuthbertson, 630 F.2d 139, 144-45 (3rd Cir. 1980) (finding that the district court had acted within its discretion "in requiring pretrial production to the court to expedite its trial decisions"); United States v. Reyes, 239 F.R.D. 591, 601 (N.D. Cal. 2006) ("In situations like this, where a defendant has identified evidence that would be admissible for impeachment but not otherwise, several courts have ordered the items produced for in camera inspection so that the court may review the material and disclose it, if ever, when it becomes ripe for impeachment."). This is allowed, if not required, because the Constitution guarantees criminal defendants the right to confront their accusers, and "the right to cross-examination has been held to be an essential purpose of the Confrontation Clause." United States v. Weiss, 930 F.2d 185, 197 (2nd Cir. 1991) (citing Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109 (1974)). This right is meaningless if a defendant is denied the opportunity to timely obtain and conduct a meaningful review of the evidence that could be utilized for impeachment purposes and thereby influence the determination of guilt. See Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923 (1967) ("The right to offer the testimony of witnesses and to compel their attendance, if

necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.").

In any event, the categories of documents set forth in the subpoena are admissible and relevant to Vega's defense and the issues raised in his pending motion to suppress. See, e.g., United States v. Johnson, 2014 WL 6068089, *6 (N.D. Cal. 2014) ("[D]uring a suppression hearing, a court is not bound by the same evidentiary rules as those at trial, so the concerns about admissibility articulated in Nixon may not apply with similar force."). For example, criminal proceedings and other matters concerning the officers' credibility relate to assertions in the suppression motion that various claims made by the officers "are internally inconsistent, contrary to video evidence, and contravened by the officers' training and LAPD policies." (Dkt. 50, Opposition at 3). In other words, the information in the officers' personnel files[3] could be used not only for impeachment purposes, but also to establish a pattern of misconduct, unlawful searches, the providing of false evidence, and failures to follow training and policies.[4] (See, e.g., United States v. McGregor, 2012 WL 6019581, *2 (N.D. Cal. 2012) (denying non-party San Francisco Police Department's ("SFPD") motion to quash subpoenas for police officer personnel files where the defendant, who was facing a felon in possession charge, "claims [the firearm] was uncovered pursuant to an illegal search conducted by the SFPD officers" and "the officers' credibility" was therefore a significant issue, along with the officers' "history of compliance with SFPD procedures as well as any complaints in which they were involved"); United States v. Chan, 2020 WL 2425798, *3 (N.D. Cal. 2020) (noting that the subpoena seeking "[a]ny and all files that record any complaints lodged against said officer(s) by private citizens, fellow officers or personnel complaining of any misconduct" sought documents that were "both relevant to and admissible in

---

[3] It appears from the LAPD's briefing that all of the requested documents are contained in the officers' personnel files. (See, e.g., Dkt. 45, Motion at 5-6) (discussing the officers' "personnel records" and the necessity, if any, for the court to conduct an in camera review before ordering disclosure).

[4] For example, as defendant notes, the Guzman and Jones declarations cite to "LAPD policy, procedure, and training to justify their actions in stopping, seizing, and searching Mr. Vega." (Dkt. 50, Opposition at 5) (citing Dkt. 33-1, Jones Decl. at ¶¶ 2-5, 7; Dkt. 33-2, Guzman Decl. at ¶¶ 2-4, 10-15, 17-18).

Defendant's forthcoming suppression motion because the credibility of the testifying officers may be at issue") (internal quotation marks omitted); see also Fed. R. Evid. 404(b)(2) (evidence of any other crime, wrong or act is admissible for proving "absence of mistake, or lack of accident").

Finally, there is no issue with respect to specificity, as the subpoena is limited to documents and materials regarding only two categories of information: (1) the officers' "criminal arrests, prosecutions, [or] convictions" and (2) "civil and administrative matters" that relate or refer to personnel actions, complaints, or investigations regarding "credibility and/or honesty, including any allegations of planting or falsifying evidence, preparation or approval of false reports, and the giving of false statements or testimony[.]" (Dkt. 45, Motion, Exh. 1, Subpoena at ECF 283). Thus, the subpoena specifically identifies those documents that could help defendant establish a pattern of unlawful conduct or that could be used to impeach the officers' credibility. See, e.g., McGregor, 2012 WL 6019581, at *2 ("The subpoena is sufficiently specific, as it requests the personnel files of three individuals, who were identified by name and badge number. . . . The SFPD has not set forth any particular reason why production of this relatively small number of documents would be overly burdensome."); see also United States v. MacKey, 647 F.2d 898, 901 (9th Cir. 1981) ("Because the [requesting party] has not yet seen the documents, it would be unreasonable to expect a more detailed connection be provided between the contents of the documents and the ultimate facts at issue in the case."); Reyes, 239 F.R.D. at 599 ("As the Supreme Court has noted, the proponent of a subpoena cannot be expected to identify the materials he seeks in exacting detail, when (as demonstrated by the fact that he must employ a subpoena) he does not have access to them.") (citing Nixon, 418 U.S. at 700, 94 S.Ct. at 3090).

B.    Not Otherwise Procurable.

The LAPD also argues that "[t]he subpoena should be quashed because defendant may be able to obtain some records through the California Public Records Act ("CPRA")." (Dkt. 45, Motion at 4). However, as the LAPD notes, only "[a] limited subsection of personnel records" is available under the CPRA.[5] (Dkt. 45, Motion at 6). In any event, defendant has already filed a

---

[5] The CPRA permits disclosure only of records relating to "the report, investigation, or findings of" incidents where a law enforcement officer has discharged a firearm at or used force against

1   CPRA request, but has not received a response.  (See Dkt. 50, Declaration of Rebecca M. Abel
2   ("Abel Decl.") at ¶ 6).
3            Finally, the LAPD asserts that "the government should have already disclosed to the
4   defendant any Brady information form the records sought in the subpoena." (Dkt. 45, Motion at
5   5).  The government states that it complied with the "well-established procedure the prosecution
6   must follow when confronted with a request by a defendant for the personnel files of testifying
7   officers" and concluded that none of the "information in the [officers'] personnel files . . . is
8   appropriate impeachment information or information that would be admissible at trial or at any
9   evidentiary hearing.  In an abundance of caution, however, the government made a disclosure of
10  information it learned during its review process."  (Dkt. 53, Joinder at 5-6) (citing Dkt. 43,
11  Supplemental Exhibit in Support of Motion to Suppress ("Exhibit J")).  But as defendant notes, the
12  government "does not actually have the documents" from the officers' personnel files.  (See Dkt.
13  50, Opposition at 7).  Further, the government's September 21, 2022, letter is conclusory and
14  provides no basis for assessing the scope and extent of the government's review of the officers'
15  personnel files.[6]  (See, generally, Dkt. 43, Exhibit J).  In other words, the government's disclosure
16  provides no specific information as to which documents were reviewed, let alone the contents of
17  such documents.
18           Indeed, putting aside that the government's disclosure makes no attempt to describe
19  specifically any of the documents it reviewed, and that the contents of the documents it did put
20  forth gives little detail and is conclusory, the fact remains that the government's "disclosure" was
21  based on what government counsel believes, i.e., her interpretation – based on her review of the

---

someone, and incidents in which "a sustained finding" was made involving: unreasonable or excessive force; failure to intervene against another officer using clearly unreasonable or excessive force; or a law enforcement officer engaged in sexual assault.  Cal. Penal Code § 832.7(b)(1).

[6] Indeed, when defense counsel contacted counsel for the government to request additional information about the disciplinary reprimands imposed against one of the officers described in the government's disclosure letter, the government indicated that it "had no further details regarding the violations and knew only the information contained in the letter." (See Dkt. 50, Abel Decl. at ¶ 4).

documents – as to what is material to defendant's guilt or punishment and what constitutes "appropriate impeachment information."  (Dkt. 53, Joinder at 6).  But such a review is a legal determination that constitutes an attorney's opinion work-product.  See, e.g., Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985) ("We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."); Shionogi & Co Ltd v. Intermune Inc, 2012 WL 12925037, *2-3 (N.D. Cal. 2012) (concluding that documents selected were protected attorney work product because "production of the subset of documents selected for translation would reveal which documents Plaintiff's attorneys selected as most important to the litigation"); see also United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").  What defense counsel determines – based on her review of the documents – also constitutes work product as to what evidence is material to defendant's guilt or punishment, or what constitutes appropriate impeachment information (for which defense counsel must prepare a defense).  Where, as here, the information is readily available and any privacy concerns can be addressed via a protective order, the court should be wary – given defendant's rights under the Confrontation Clause and right to present a defense under the Compulsory Process Clause – in limiting the review of the universe of documents to determine what is material to guilt or punishment, or is appropriate impeachment information.  See Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1000 (1987) ("[A]t a minimum, . . . criminal defendants have the right to the government's assistance in compelling attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.") (emphasis added); United States v. Stever, 603 F.3d 747, 755 (9th Cir. 2010) ("Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.  This right includes, at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.") (internal citations and quotation marks omitted).

C.    Inability to Prepare and Unreasonable Delay.

The LAPD did not address this factor. (See, generally, Dkt. 45, Motion). Nevertheless, the court is persuaded that it weighs in favor of defendant. The documents sought are relevant to the pending motion to suppression and could significantly alter the scope of evidence admitted during trial. (See Dkt. 30, Motion to Suppress at 2); see, e.g. United States v. Underwood, 725 F.3d 1076, 1080 (9th Cir. 2013) (affirming district court's grant of motion to suppress evidence of "thirty-three kilograms of cocaine, $417,000 in cash, 104 ecstasy pills, packaging material, a money counter, and a 'pay/owe' sheet" in drug trafficking prosecution). Defendant will be unable to conduct any meaningful preparation for proceedings on the motion to suppress and/or the trial itself if responsive documents are not turned over before trial.

D.    Good Faith.

Defendant has demonstrated that the subject subpoena is made in good faith and is not intended as a general fishing expedition. See Nixon, 418 U.S. at 699-700, 94 S.Ct. at 3103 (requiring that the application be made "in good faith" and not be "intended as a general 'fishing expedition'"). Given the allegations that the officers engaged in an unlawful search and arrest, evidence that the officers previously engaged in misconduct, disregarded LAPD policy and/or protocols, and/or misinterpreted database search results is relevant to defendant's pending suppression motion. (See Dkt. 30, Motion to Suppress at 1, 7-23).

E.    In Camera Review.

In light of the court's determination that the officers' personnel files may contain information that is or may be material to defendant's guilt and in an effort to ensure that defendant's rights under the Confrontation Clause and right to present a defense are respected, the court will order that the officers' entire personnel files be provided to the court for an in camera review. See Ritchie, 480 U.S. at 58, 60, 107 S.Ct. at 1002, 1003 ("[Defendant] is entitled to have the [] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial."); see, e.g., United States v. Flores, 2017 WL 2056018, *2, *3 (C.D. Cal. 2017) (district court reviewed deputies' personnel records in camera as a result of

subpoenas). After the in camera review, the court will determine what documents, if any, will be produced to defendant.

Based on the foregoing, IT IS ORDERED THAT:

1. The Los Angeles Police Department's Motion to Quash **(Document No. 45)** is **granted in part** and **denied in part** as set forth in this Order.

2. No later than **May 12, 2023**, the LAPD shall produce to the court for an in camera review the entire personnel files for Guzman, Jianu, and Jones. Pending the court's review of the documents, the materials shall be subject to the Protective Order previously issued in this case. (See Dkt. 40, Court's Order of September 21, 2022).

Dated this 6 day of May, 2023.

/s/
Fernando M. Olguin
United States District Judge